IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:22-cv-00319-SKC

M.L.S.,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

## OPINION & ORDER

---

This action is before the Court under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff M.L.S.'s[1] application for supplemental security income. The parties have consented to the Magistrate Judge's jurisdiction. Dkt. 9.[2]

The Court has carefully considered the parties' briefs, the social security administrative record, and applicable law. No hearing is necessary. Because the ALJ

---

[1] This Opinion & Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2.

[2] The Court uses "Dkt. __" to refer to specific docket entries in CM/ECF and uses "AR: __" to refer to documents in the administrative record. The administrative record may be found at Dkt. 8.

1

applied the correct legal standards, met her burden at Step Five, and substantial evidence in the record supports her findings and the Final Decision, the Court AFFIRMS the Final Decision.

## BACKGROUND

On February 26, 2019, Plaintiff filed a Title XVI application for supplemental security income (SSI) under the Social Security Act claiming she became disabled beginning November 1, 2014. She eventually appeared and testified at an administrative law hearing on August 11, 2020, before Administrative Law Judge Erin Justice (ALJ). Attorney Debra King represented Plaintiff at the hearing.

The ALJ issued her written Decision on May 4, 2021. Dkt. 8-2. She determined Plaintiff had not been under a disability since her February 26, 2019 application for SSI. Plaintiff then requested review by the Appeals Council, which denied her request, and in doing so, the ALJ's Decision became the Final Decision of the Commissioner of Social Security. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff then timely filed this action. The Court has jurisdiction to review the Final Decision under 42 U.S.C. § 405(g).

2

## SSI FRAMEWORK[3]

A person is disabled within the meaning of the Social Security Act "only if [her] physical and/or mental impairments preclude [her] from performing both [her] previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-CV-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (citing 42 U.S.C. § 423(d)(2)). "The mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Fritz v. Colvin*, 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled:

---

[3] Throughout this Opinion, while the Court may cite relevant sections of Part 404 of Title 20 of the Code of Federal Regulations (which contain the Commissioner's regulations relating to disability insurance benefits), identical, parallel regulations can be found in Part 416 of that same title, relating to SSI.

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made based on the claimant's age, education, work experience, and residual functional capacity.

*Wilson*, 2011 WL 9234, at *2 (citing 20 C.F.R. § 404.1520(b)–(f)); *see also* 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). Impairments that meet a "listing" under the Commissioner's regulations (20 C.F.R. § Pts. 404 and 416, Subpt. P, App. 1) and a duration requirement are deemed disabling at Step Three with no need to proceed further in the five-step analysis. 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Between the Third and Fourth steps, the ALJ must assess the claimant's residual functional capacity (RFC). *Id.* § 416.920(e). The claimant has the burden of proof in Steps One through Four. The

Commissioner bears the burden of proof at Step Five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ's Decision tracks the five-step process. At Step One, she found Plaintiff had not engaged in substantial gainful activity since the date of her SSI application, February 26, 2019. AR: 20. At Step Two, she found Plaintiff has the following severe impairments: fibromyalgia; dysfunction of major joints, chronic pain syndrome (CPS); degenerative disc disease; obesity, depression; anxiety; posttraumatic stress disorder (PTSD) and schizophrenia. *Id.* at 21. At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* She then found Plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b) except she can stand and/or walk for a total of four hours in an eight-hour day and sit for about six hours in an eight hour day. She can never climb ladders, ropes or scaffolds, but she can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. She can understand, remember and perform simple work, and she can have occasional interaction with coworkers, supervisors and the general public. She can tolerate occasional changes in the workplace.

*Id.* at 23-24. At Steps Four and Five, the ALJ found Plaintiff was unable to perform any past relevant work, but that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 32-34. Accordingly, the ALJ determined Plaintiff was not disabled during the relevant period.

## STANDARD OF REVIEW

In reviewing the Commissioner's Final Decision, the Court's

5

> review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill*, 690 F. App'x 589, 590 (10th Cir. 2017) (internal quotations and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").

A court may not reverse an ALJ just because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing the ALJ's decision was justified. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." *Lee*, 690 F. App'x at 591-92. Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). A reviewing court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In addition, "if the ALJ failed to apply the correct legal test,

6

there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

Plaintiff argues the ALJ failed to meet the Commissioner's burden at Step Five of the sequential process. She claims the ALJ failed on this score in three respects: (1) the "ALJ's finding that the limitations (sic) resulting from [Plaintiff]'s combined physical and mental impairments translated into the ability to perform work on a sustained basis is not supported by substantial evidence[;]" (2) the "ALJ erred by failing to address or reconcile material conflicts in the VE's testimony[;]" and (3) the "ALJ did not establish that significant numbers of jobs existed in the 'national economy' as the term is defined in 20 C.F.R. §§ 416.960(c) and 416.966(a)."

### 1. The ALJ's Step Five Analysis

At Step Five, it is the Commissioner's burden to establish that—considering the plaintiff's age, education, work experience, and RFC—work exists in significant numbers in the national economy that the plaintiff can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1186 (10th Cir. 2001); *Barrett v. Astrue*, 340 F. App'x 481, 487 (10th Cir. 2009). An ALJ may use a vocational expert (VE) at Step Five to provide an opinion about the plaintiff's ability to perform work in the national economy. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). This is customarily achieved by the ALJ posing a hypothetical to the VE that includes all the limitations from the ALJ's RFC determination. An ALJ may rely on the VE's testimony as substantial

7

evidence if the hypothetical posed to the VE contained each of the RFC limitations. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir.2000) (noting the VE's answer to a hypothetical question that included all the limitations from the RFC assessment provided a proper basis for the ALJ's disability decision); *Torres v. Saul*, No. CIV-18-155-SPS, 2019 WL 4467640, at *5 (E.D. Okla. Sept. 18, 2019) ("If the hypothetical question posed to the VE does not include all of the ALJ's RFC limitations, the VE's testimony cannot constitute substantial evidence to support the Commissioner's decision."); *see also Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.") (internal quotations and citation omitted); *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) ("[T]he hypothetical questions posed to the VE to assist with the step-five determination must reflect with precision all—and only—the impairments and limitations borne out by the evidentiary record.") (internal quotations and citation omitted).

The only burden on the Commissioner at Step Five is to prove there is other work the plaintiff can perform; this burden shifting at Step Five does not shift the plaintiff's burden to prove their RFC. 20 C.F.R. § 416.960(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.").

8

### a. Whether the ALJ failed to reconcile material conflicts in the VE's testimony.

At the hearing, the ALJ posed the following hypothetical to the VE:

[P]lease assume an individual of [Plaintiff's] age, education and past work, who can occasionally lift 20 pounds, frequently lift 10 pounds; can stand/walk for a total of four hours; and sit for about six hours in an eight-hour day; can never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch and crawl; can understand, remember and perform simple work; can have occasional interaction . . . with coworkers, supervisors and the general public; can tolerate occasional changes in the workplace[.]

AR: 56. This hypothetical precisely contains each of the limitations from the RFC.[4] *Compare* AR: 56 *with* AR: 23-24. The VE testified that the hypothetical individual could perform three jobs in the national economy each at the light, unskilled level, and with an SVP (specific vocational preparation) of 2 and erosion to account for the Plaintiff's limitation of standing or walking to four hours in an eight hour day: (1) small products assembler (with erosion by 30 percent); (2) electronic worker (with erosion by 10 percent); and (3) machine operator (with erosion by 60 percent). AR: 56-57.

The ALJ went on to ask the VE whether his testimony was consistent with the DOT and its companion publications. *Id.* at 58. In response, the VE testified he is "not inconsistent with the DOT," but noted the DOT provides "little to no guidance concerning portions of the hypothetical[,]" and therefore, he also relied on his "35+

---

[4] The ALJ incorporated these limitations by reference in two subsequent hypotheticals posed to the VE. AR: 57-58.

9

years experience as a voc rehab counselor" in rendering his opinions. *Id.*; *see Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) ("Providing this type of professional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish. The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof.") (citing *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993); SSR 00-4P at p.2 ("Information about a particular job's requirements or about occupations not listed in the DOT may be available . . . from a VE's . . . experience in job placement or career counseling.")). Because the ALJ's hypothetical included all the limitations from the RFC assessment, the VE's testimony about the existence of jobs in the national economy that Plaintiff could perform was substantial evidence to support the ALJ's findings at Step Five.

Plaintiff argues the ALJ erred because the jobs the VE identified "are incompatible with 'simple work' because the (sic) all have a 'reasoning' level of 2." Dkt. 10 at p.13. But applicable authority from this Circuit does not support this argument.

At Step Three, the ALJ found Plaintiff has moderate limitations in the areas of understanding, remembering or applying information; interacting with others; and adapting or managing oneself. AR: 22-23. She found Plaintiff has mild limitations in the areas of concentrating, persisting, or maintaining pace. *Id.* at 23. An ALJ may incorporate moderate limitations in an RFC with the restrictions placed on the

10

claimant's work activity. *McGregor v. Saul*, No. CIV-19-496-SM, 2019 WL 7116110, at *3 (W.D. Okla. Dec. 23, 2019). "This approach is acceptable in [this] circuit, for [the Tenth Circuit has] held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)).

Such was the case in *Vigil*, where the Tenth Circuit held the ALJ properly accounted for the plaintiff's moderate limitations in concentration, persistence, and pace, by limiting him to unskilled work and an SVP of 1 or 2. *Vigil,* 805 F.3d at 1204. Citing SSR 96-9p, the *Vigil* Court noted that unskilled work generally requires (1) understanding, remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. *Id.*; *see also Hanson v. Colvin*, No. CIV-15-1146-HE, 2016 WL 6078394, at *4 (W.D. Okla. June 10, 2016), *report and recommendation adopted*, 2016 WL 6078358 (W.D. Okla. Oct. 17, 2016) (finding the ALJ limiting plaintiff to SVP 2 with additional limitations properly accounted for plaintiff's moderate limitations resulting from her mental impairments) (citing cases).

The ALJ properly did the same here. In relevant part, her RFC assessment limited the Plaintiff to light work with the additional limitation that she can

understand, remember and perform simple work and can tolerate occasional changes in the workplace. AR: 24. The three jobs in the national economy she found based on the VE's testimony—small products assembler (with erosion by 30 percent); electronic worker (with erosion by 10 percent); and (3) machine operator (with erosion by 60 percent)—were each at the light, unskilled level with an SVP of 2. As a result, the Court finds no error and no conflict between the RFC assessment and the light, unskilled, and SVP 2 level of the three jobs in the national economy found by the ALJ.[5] SSR 96-9p; *Vigil,* 805 F.3d at 1204.

### b. Whether the ALJ failed to establish significant numbers of jobs existed in the national economy.

Plaintiff also argues the ALJ did not establish that significant numbers of jobs existed in the "national economy" as the term is defined in 20 C.F.R. §§ 416.960(c) and 416.966(a). This argument is not persuasive.

---

[5] Plaintiff was represented by counsel at the administrative law hearing. The full extent of her attorney's cross examination of the VE was as follows:

> Q: Could I please have the reasoning, language and math requirements for the three jobs, the last three jobs you listed?
> A: Certainly, machine operator, reasoning, math, language 2, 1 and 1, respectively; electronics worker, 2, 1 and –
> Q: I'm sorry, that was 2, 1 and what?
> A: Electronics worker 2, 1 and 2 respectively; small products assembler, 2, 1 and 1, respectively.
> Atty: Okay. I have nothing further, Your Honor.

AR: 59.

After posing the particulars from the RFC to the VE, the ALJ asked the VE whether there existed other jobs in the "national economy" that the Plaintiff could perform. The ALJ testified there were 43,400 small product assembler jobs available in the national economy, at least 15,300 electronics worker jobs, and 18,000 machine operator jobs, for a total of 76,700 jobs in the national economy. AR: 34, 56-57. Courts in the Tenth Circuit have found numbers far lower than the 76,700 jobs nationally as significant at Step Five.[6] *See Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (11,000 national jobs significant); *Lynn v. Colvin*, 637 F. App'x 495, 499 (10th Cir. 2016) (24,900 national jobs significant); *see also Jones v. Colvin*, No. CIV-14-170-RAW-KEW, 2015 WL 5573074, at *3 (E.D. Okla. Sept. 22, 2015) (15,520 national jobs significant); *Fox v. Colvin*, No. CIV-14-489-R, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015) (32,000 national jobs significant); *Robben v. Saul*, No. 20-cv-173-SM, 2021 WL 433202, *4 (W.D. Okla. Feb. 8, 2021) (40,000 jobs significant); *Washington*

---

[6] Plaintiff also argues the ALJ erred by not applying the factors identified in *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). But, as the Tenth Circuit has explained, an ALJ need only apply the *Trimiar* factors when the ALJ identifies *only* regional job numbers. *See Raymond v. Astrue*, 621 F.3d 1269, 1275 n.2 (10th Cir. 2009) Those circumstances do not apply here because the VE testified to the number of jobs existing in the national economy. *See also id.* ("The problem is that the controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy."). Further, Plaintiff's argument that the ALJ was required to develop the record into the source of the VE's testimony regarding the national numbers is woefully underdeveloped. And the Court has yet to see a case where an ALJ was required to delve into the VE's source material for the national numbers in the way Plaintiff suggests; nor has Plaintiff cited any such cases. *See, e.g., Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).

*v. Saul*, No. 19-cv-1286-EFM, 2019 WL 4080925, at *4 (D. Kan. Aug. 29, 2019) (53,000 jobs significant).

The Court finds no error here. The ALJ relied on the VE's testimony regarding the number of jobs existing in the national economy considering the limitations in the RFC, the DOT, and the ALJ's 35-plus years of experience. This is substantial evidence in the absence of some conflict between the national numbers and the VE's testimony. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

**2. Whether the ALJ's finding that the limitations from the RFC translated into the ability to perform work on a sustained basis is supported by substantial evidence.**

Plaintiff couches this argument as an additional reason why the Commissioner failed to meet its Step Five burden. But this argument is not properly squared under Step Five. Rather, as Plaintiff argues the point, it appears to be an attack on either the ALJ's findings at another step in the sequential process or an attack on the ALJ's RFC assessment, either of which are the Plaintiff's burden to prove. For example, Plaintiff argues that "[a]lthough the objective medical evidence that supported [Plaintiff's] claims of pain and other symptoms is abundant, the ALJ was not persuaded by [Plaintiff's] statements about the intensity, persistence, and limiting effects of her symptoms." Dkt. 10 at p.8. She summarizes her argument stating, "For

14

these reasons, the ALJ's decision fails to demonstrate, given the combined effect of all of [Plaintiff]'s medically determinable impairments, that [Plaintiff] could sustain work." *Id.* at p.12.

First, as Defendant points out, Plaintiff's characterization of these arguments as a Step Five issue improperly attempts to shift the burden of proof when it comes to proving the RFC or some other step in the sequential process. The Commissioner bears the burden to prove Step Five, but proving the other steps in the sequential process was Plaintiff's burden. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). So Plaintiff's overall argument that Defendant failed its burden at Step Five in the manner argued is a non-starter. *See* 68 FR 51153-01, 2003 WL 22001943, at *51155 ("Thus, the only burden shift that occurs at step 5 is that we are required to prove that there is other work that you can do, given your RFC, age, education, and work experience. That shift does not place on us the burden of proving RFC.").

Second, after carefully considering Plaintiff's arguments outside the context of Defendant's Step Five burden, the Court finds Plaintiff's arguments are ultimately a request to reweigh the evidence, which the Court cannot do. *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007). Substantial evidence in the record supports the ALJ's RFC findings and her ultimate determination of nondisability. And the ALJ's thorough discussion of the evidence and the reasons for her conclusions demonstrate she applied the correct legal standards throughout the Final Decision.

\* \* \*

For the reasons shared above, the Court is satisfied that the ALJ considered all relevant facts, applied the correct legal standards, and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Plaintiff was not disabled within the meaning of Title XVI of the Social Security Act, and therefore, not eligible to receive SSI.

Accordingly, IT IS ORDERED that the Commissioner's Final Decision is AFFIRMED and this civil action is DISMISSED, with each party paying their own fees and costs.

DATED: November 14, 2023.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge